## STATE v. ED ERNST.[1]

March 21, 1941.

No. 32,696.

*C. U. Landrum, D. N. Lindeman,* and *William W. Ward,* for appellant.

*J. A. A. Burnquist,* Attorney General, *Chester S. Wilson,* Deputy Attorney General, *George B. Sjoselius,* Special Assistant Attorney General, and *J. Arthur Bensen,* County Attorney, for the State.

[1] Reported in 297 N. W. 24.

LORING, JUSTICE.

Defendant was convicted of a violation of L. 1939, c. 284, § 1, 3 Mason Minn. St. 1940 Supp. § 2684-9, requiring the filing of a surety company bond with the registrar of motor vehicles and the payment of a $5 fee for the general revenue fund before offering for sale or placing upon a used car lot for sale any used or second-hand motor vehicle brought into this state for the purpose of sale or resale. He attacks the constitutionality of the law with the contention that it violates the commerce clause of the constitution of the United States and the due process and equal protection clauses of the Fourteenth Amendment. He also contends that the act violates Minn. Const. art. 1, § 2, in that it provides for unjust discrimination against the sale of vehicles on account of their out-of-state origin and that it deprives him of the equal protection of the law. The state, on the other hand, contends that c. 284 does not violate either the state or federal constitutions, that the property affected by it is not in interstate commerce because it has come to rest within this state, and that the requirement of the bond and fee for filing and approving it is a reasonable exercise of the state's police power upon property brought into the state and is calculated to prevent fraud and deception in the sale of used cars to Minnesota citizens. The bond is for the benefit of the purchaser conditioned to protect him from failure of title and from misrepresentation or breach of warranty as to freedom from liens, quality, condition, use, or value of the vehicle so sold.

The state lays much stress upon cases such as Minnesota v. Blasius, 290 U. S. 1, 54 S. Ct. 34, 78 L. ed. 131, where the taxing power of the state was involved. We do not regard the case at bar as one involving the taxing power, and hence the cases cited by the state which involve the nondiscriminatory exercise of that power upon property brought to rest in the state are not in point. In the Blasius case, for instance, there was no discrimination against cattle brought into the state from other states. The question was whether the continuity of the flow of interstate traffic was sufficiently interrupted to subject the cattle to the same tax

to which other cattle in the state were subject. Neither are the cases cited by the state relating to the so-called Caravan Acts in point. In those cases the right to use the highways constructed by the state and the added expense of policing such highways were involved.

In construing the rights of states in the exercise of their police power the federal courts have been liberal in sustaining regulations which incidentally and indirectly affect interstate commerce. But the exercise of either the taxing power or the police power by a state will not be sustained if the effect is to establish an economic barrier between the states. Baldwin v. G. A. F. Seelig, Inc. 294 U. S. 511, 527, 55 S. Ct. 497, 502, 79 L. ed. 1032, 101 A. L. R. 55. In that case the Supreme Court, speaking through Mr. Justice Cardozo, said:

"Restrictions so contrived are an unreasonable clog upon the mobility of commerce. They set up what is equivalent to a rampart of customs duties designed to neutralize advantages belonging to the place of origin. They are thus hostile in conception as well as burdensome in result."

A state may not even in good faith and without any purpose of violating the constitution unreasonably burden interstate commerce by the exertion of its police power. Minnesota v. Barber, 136 U. S. 313, 319, 10 S. Ct. 862, 34 L. ed. 455. Notwithstanding the extension of the concept of the state's police power within recent years, the exercise of that power is still limited by the due process and equal protection clauses of the Fourteenth Amendment to the constitution as well as the commerce clause [art. I, § 8, cl. 3], and by Minn. Const. art. 1, § 2, and there can be no arbitrary discrimination in the exercise of the power. Asher v. Ingels (D. C.) 13 F. Supp. 654, 658; Panhandle Eastern Pipe Line Co. v. State Highway Comm. 294 U. S. 613, 55 S. Ct. 563, 79 L. ed. 1090. While it may be that the purpose of the act under examination was in part to protect the citizens of this state against the importation of stolen automobiles, the effect of it has been to discriminate

against used cars originating without the state in favor of those whose titles are registered within the state. The law already in force in this state requires the registrar to refuse registration of title to vehicles brought into Minnesota from other states until evidence of title thereof is furnished to him in the same manner as certificates of this state or evidence of the chain of ownership thereof. 1 Mason Minn. St. 1927, § 2679. May the state, in addition to such evidence, require the owner of the used car originating outside the state to go to the expense of purchasing a surety company bond which not only guarantees the title but the representations that may be made as to the condition of the car? It is the contention of the state that before the incidence of the provisions of c. 284 upon the property in question it has come to rest and is no longer within the protection of the commerce clause and that it has become a part of the mass of intrastate property. It may be subject to a nondiscriminatory tax or regulation, but property cannot be discriminated against on account of its origin without the state. Brimmer v. Rebman, 138 U. S. 78, 82, 11 S. Ct. 213, 34 L. ed. 862; Minnesota v. Barber, 136 U. S. 313, 10 S. Ct. 862, 34 L. ed. 455; Crutcher v. Kentucky, 141 U. S. 47, 62, 11 S. Ct. 851, 35 L. ed. 649. No doubt the state may require evidence of title before admitting the car to registration within this state and may cause an investigation of such evidence, but the requirement of a bond is expensive and burdensome. Asher v. Ingels (D. C.) 13 F. Supp. 654, 659; Park McLain, Inc. v. Hoey (D. C.) 19 F. Supp. 990. Used cars registered in Minnesota are not subjected to that expense or burden before they may be offered for sale. Certainly the requirement of a bond to protect the purchaser against misrepresentation as to the condition of the car is discriminatory and unlawful as a violation of the due process and equal protection clauses of the Fourteenth Amendment and the rights and privileges clause of our constitution. Is it likewise unconstitutional as to the requirement of the bond to insure the title? The case of Park McLain, Inc. v. Hoey (D. C.) 19 F. Supp. 990, is squarely in point on all the questions here involved. That was a

three-judge decision in the United States District Court with Circuit Court Judge Parker presiding, and the law of North Carolina there under consideration was substantially the same as c. 284 except that the fee required for the filing and approval of the bond was ten instead of five dollars. The court, speaking through Judge Parker, said (19 F. Supp. 992):

"It will be noted that the bond required is to relate, not merely to the title of the vehicle and to its freedom from liens, but also to loss, damage, and expense by reason of fraudulent representation or breach of warranty as to quality, condition, use, or value; and the proofs leave no doubt *that the furnishing of such a bond will be expensive and burdensome and will place out-of-state used automobiles at a great disadvantage in competition with used automobiles from within the state.* The $10 fee required upon deposit of each bond is not shown to have any reasonable relation to the cost of registering the title, but on the contrary is imposed in addition to the regular fees for such registration. It nowhere appears, from the statute or otherwise, that it is imposed as reimbursement for any expense incurred by the state, and the statute directs that it be paid into the general fund. The exaction of the fee cannot be justified, therefore, as a reimbursement of expense incurred by the state. Ingels v. Morf, 300 U. S. 290, 57 S. Ct. 439, 81 L. Ed. 653. And it is clear that, like the requirement of the bond, it imposes a burden upon interstate commerce in used motor vehicles." (Italics ours.)

It is evident from a reading of Judge Parker's opinion that the case was thoroughly presented and carefully considered, and in our view the opinion is entitled to great weight. The learned court, in commenting upon the contention there made, as here, that the property had come to rest within the state and that its transportation in interstate commerce had ceased, admitted that it was subject to the police power of the state, but said that "it is equally well settled that the state may not in the exercise of such power discriminate against property which has thus been brought in from

other states; for to do so is to burden interstate commerce in violation of the commerce clause of the Constitution," citing numerous supreme court cases. Such articles of commerce are protected from burdensome discrimination by reason of their foreign origin. Welton v. Missouri, 91 U. S. 275, 279, 23 L. ed. 347; Machine Co. v. Gage, 100 U. S. 676, 678, 25 L. ed. 754; Guy v. Baltimore, 100 U. S. 434, 25 L. ed. 743; Webber v. Virginia, 103 U. S. 344, 26 L. ed. 565; Walling v. Michigan, 116 U. S. 446, 457, 6 S. Ct. 454, 458, 29 L. ed. 691; I. M. Darnell & Son Co. v. City of Memphis, 208 U. S. 113, 124, 28 S. Ct. 247, 251, 52 L. ed. 413; Bethlehem Motors Corp. v. Flynt, 256 U. S. 421, 41 S. Ct. 571, 65 L. ed. 1029; Gramling v. Maxwell (D. C.) 52 F. (2d) 256; In re Schechter (C. C.) 63 F. 695. It is quite obvious that the requirement of a bond is an illegal discrimination on account of the origin of the car although it may have come to rest in this state, there being no such requirement in regard to used cars originating here. If the power of the state is to be exercised it must be exercised in such a way as not to discriminate between used cars according to their place of origin. As said by Judge Parker in the case cited (19 F. Supp. 993):

"If it is thought that the sale of such cars furnishes peculiar opportunities for fraud, the answer is that if regulation of interstate commerce in used cars is deemed desirable, it must be remembered that it is Congress, and not the State Legislatures, to whom the people have delegated the power of regulating such commerce."

The order appealed from is reversed with directions to discharge the defendant.