## STATE v. ROBERT THEODORE SCHMIDT.

159 N. W. (2d) 113.

May 17, 1968—No. 40,632.

*Ryan, Ryan & Ebert, Richard C. Ebert, Buchanan, Ingersoll, Roder-vold, Kyle & Buerger,* and *David B. Buerger,* for appellant.

*D. A. Larson,* City Attorney, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

OTIS, JUSTICE.

This is an appeal from a conviction for violating an ordinance of the city of Brainerd requiring transient merchants to obtain a permit to do business in that city and requiring nonresidents to post a bond. The issue is whether such an ordinance is valid. We hold it is not.

The facts are not in dispute. Defendant, Robert Theodore Schmidt, is a resident of St. Cloud, a city located in Stearns, Benton, and Sherburne Counties. He is employed by Wearever Aluminum Inc. of New

Kensington, Pennsylvania, to solicit orders for the sale of cooking utensils in the city of Brainerd and in ten other Minnesota communities. Defendant was charged by the city of Brainerd with having made sales on October 10, 1964, in violation of Ordinance No. 469, relevant provisions of which are set forth in the footnote.[1] The municipal court of Brainerd found defendant guilty and imposed a sentence of $50 or 15

---

[1] "Section 1. Permit required. It shall be unlawful for any peddler, canvasser or transient merchant as defined in Section 2 of this ordinance, to engage in any such business within the City of Brainerd without first obtaining a permit therefor in compliance with the provisions of this ordinance.

\*    \*    \*    \*    \*

"Section 6. Investigation and Issuance.

"(a) Upon receipt of each application for permit under Section 4 of this Ordinance, it shall be referred to the Chief of Police, who shall immediately institute such investigation of the applicant's business and moral character as he deems necessary for the protection of the public good and shall endorse the application in the manner prescribed in this section within 72 hours after it has been filed by the applicant with the Clerk.

"(b) If as a result of such investigation, the applicant's character or business responsibility is found to be unsatisfactory, the Chief of Police shall endorse on such application his disapproval and his reasons for the same, and return the said application to the City Clerk, who shall notify the applicant, that his application is disapproved and that no license will be issued.

\*    \*    \*    \*    \*

"Section 7. Bond. Every applicant under Section 4, not a resident of Crow Wing County, Minnesota, shall file with the City Clerk a surety bond, running to the City in the amount of $250.00, with surety acceptable to and approved by the Council, conditioned that the said applicant shall comply fully with all the provisions of the Ordinances of the City of Brainerd and the statutes of the State of Minnesota regulating peddlers, canvassers, solicitors, transient merchants, itinerant merchants, or itinerant vendors, as the case may be, and guaranteeing to any citizen of the City of Brainerd that all money paid as a down payment will be accounted for and applied according to the representations of the applicant and further guaranteeing to any citizen of the City of Brainerd doing busines with said applicant that the property purchased will be delivered according to the representations of the applicant. Action on such bond may be brought by the person or persons aggrieved and for whose benefit, among others, the bond is given, but the surety may, by paying, pursuant to order of the Court, the face amount of the bond to

days. The matter was then appealed to the district court and tried without a jury, the only issue being the validity of the ordinance. Defendant was again convicted in the district court. The ordinance was upheld for reasons set forth in an accompanying memorandum. A sentence of $50 or 10 days was imposed November 7, 1966.

The trial court held that the discrimination between residents and nonresidents of Crow Wing County with respect to the bond requirement was proper because it protected citizens who deal with solicitors not otherwise amenable to suit in the same manner as resident salesmen. The court felt that a $250 bond was nominal and within the police power of the city to exact from nonresident solicitors. Minn. St. 437.02.

■ Because it denies defendant equal protection of the laws and imposes a burden on interstate commerce, we hold the ordinance unconstitutional.[2] The city of Brainerd argues that the bond required of nonresidents by Section 7 of the ordinance is valid because it provides some financial security for Brainerd citizens in the event a dispute arises over sales consummated by a nonresident solicitor. Local solicitors, it is argued, are amenable to suit for breach of contract or fraud. According

the clerk of court in which suit is commenced, be relieved without costs of all further liability.

\* \* \* \* \*

"Section 12. None of the provisions of this ordinance shall be so applied as to occasion an undue burden upon interstate commerce. In any case where a requirement of this Ordinance is believed by an applicant for permit to place an undue burden upon such commerce, he may apply to the city council for an adjustment of the requirement so that it shall not be discriminatory, unreasonable or unfair as to such commerce. The applicant shall, by affidavit and supporting testimony, show his method of business and such other information as the Council may deem necessary in order to determine the extent, if any, of the alleged undue burden on such commerce. The Council shall then conduct an investigation, comparing applicant's business with other business of like nature and shall determine whether the requirements fixed by this ordinance are unfair, unreasonable or discriminatory as to applicant's business and shall fix for applicant requirements that are fair, reasonable and nondiscriminatory."

[2] See, U. S. Const. Amend. XIV and art. I, § 8; Minn. Const. art. 1, § 2, and art. 4, § 33.

to the city, the bond is necessary to protect "the poor and gullible citizenry" from solicitors who are "generally out of sight or beyond the reach of process when sought." The fallacy of the city's argument lies in the assumption that salesmen living in Crow Wing County are necessarily solvent and financially responsible, whereas their counterparts in Benton County and elsewhere are more likely to be without assets from which to satisfy a judgment. The record does not support this assumption.

We have held in a number of cases that ordinances governing itinerant merchants and transient vendors cannot be sustained if they do not apply equally to residents and nonresidents of the municipality. In State ex rel. Greenwood v. Nolan, 108 Minn. 170, 122 N. W. 255, we struck down an ordinance which provided for licensing all solicitors except residents of the municipality. The same result was reached in State ex rel. Mudeking v. Parr, 109 Minn. 147, 123 N. W. 408. There a license fee of $150 was required of transient peddlers, but not of resident merchants, for engaging in house-to-house solicitation. Our court held that the purpose of the ordinance was to prevent peddling from becoming a public nuisance. However, we questioned whether local solicitors were any less a nuisance than those who solicited for a nonresident company. We concluded that the ordinance resulted in an unconstitutional classification which could not be sustained either as a tax measure or as a police regulation.

In so far as the ordinance directs that a bond shall be exacted from all but residents of Crow Wing County, we have no difficulty in applying the rule consistently followed and hold that the classification is arbitrary and unreasonable.

■ With respect to the effect of the ordinance on interstate commerce, the law is equally well settled. Beginning with Town of Green River v. Fuller Brush Co. (10 Cir.) 65 F. (2d) 112, 88 A. L. R. 177, state and Federal courts have been called on to review the validity of a great many "Green River" ordinances which prohibit or license house-to-house peddling.[3] Prior to Green River, the United States Supreme Court

---

[3] The background and treatment of these ordinances has been fully discussed in Breard v. Alexandria, 341 U. S. 622, 627, 71 S. Ct. 920, 924, 95 L. ed. 1233, 1240, rehearing denied, 342 U. S. 843, 72 S. Ct. 21, 96 L. ed. 637.

in Real Silk Hosiery Mills v. Portland, 268 U. S. 325, 45 S. Ct. 525, 69 L. ed. 982, held unconstitutional an ordinance requiring a peddler's bond where the ordinance did not discriminate against nonresidents, but provided for both a license and a bond from all house-to-house solicitors. This, the United States Supreme Court held, imposed an unconstitutional burden on interstate commerce. It rejected the argument that the legislation was justified as a means of preventing fraud. The court's holding was distinguished in Breard v. Alexandria, 341 U. S. 622, note 15, 71 S. Ct. 920, 95 L. ed. 1233, but has not been subsequently overruled or modified. Both the Breard case and California v. Thompson, 313 U. S. 109, 61 S. Ct. 930, 85 L. ed. 1219, indicate that the Portland ordinance singled out interstate commerce for regulation, however. As we see it, the California statute which required Thompson to post a bond to carry on his business as a transportation agent was upheld because it did not suffer from the impediments of a local ordinance. The distinction has been well articulated in Moyant v. Borough of Paramus, 30 N. J. 528, 154 A. (2d) 9. There the New Jersey court passed on the validity of an ordinance which required that solicitors post a $1,000 surety bond unless they were residents of the defendant borough. The court pointed out that the Thompson case did not present the problem of oppression and expense inherent in posting a multiplicity of bonds required if a merchant, engaged in interstate commerce, wished to do business in a number of different communities. The court underscored the problem by quoting from Nippert v. City of Richmond, 327 U. S. 416, 66 S. Ct. 586, 90 L. ed. 760, in the following language (30 N. J. 551, 154 A. [2d] 21):

"* * * The drummer or salesman whose business requires him to move from place to place, exhausting his market at each periodic visit or conducting his business in more sporadic fashion with reference to particular localities, would find the cumulative burden of the Richmond type of tax eating away all possible return from his selling. A day here, a day there, five days now and five days a year or several months later, with a flat license tax annually imposed lacking any proportion to the number or length of visits or the volume of the business or return can only mean the stoppage of a large amount of commerce which

would be carried on either in the absence of the tax or under the incidence of one taking account of these variations."

The Moyant decision then held that the ordinance requiring a license fee and bond was invalid because it imposed an unreasonable burden on interstate commerce.

We concur in the views expressed by the New Jersey court. The defendant here does business in at least 11 Minnesota communities. To require him to apply for a permit, undergo an investigation by the chief of police, and post a bond in each community would be an intolerable and unreasonable imposition on the operation of a legitimate business. Defendant does not object to registering and furnishing each community with complete information regarding his business, his background, and his method of operation. We agree that such an ordinance would be valid. So too would a statute requiring a statewide bond and license. But, for the reasons we have stated, the present ordinance of the city of Brainerd cannot be sustained.

Nor does Section 12, authorizing applications for relief from the effect of the ordinance, preserve its validity. In our opinion the process of applying to the city council, undergoing an investigation, and taking the necessary steps to persuade the city to relieve the applicant of the necessity for otherwise complying with the ordinance, are burdens which are as vexatious as the procedures which the applicant would thereby seek to avoid.

Reversed.