MILLER BREWING COMPANY, Appellant,

v.

STATE of Minnesota, Minnesota Department of Revenue, and Commissioner of Revenue, Respondents.

No. 48509.

Supreme Court of Minnesota.

June 15, 1979.

Gray, Plant, Mooty, Mooty & Bennett and James R. Lande, Kenneth M. Anderson and Craig L. Vollmar, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., and Thomas K. Overton, Sp. Asst. Atty. Gen., Dept. of Revenue, St. Paul, for respondents.

Briggs & Morgan, R. E. Kyle and R. Scott Davies, St. Paul, amicus curiae for Minnesota Brewers Assn.

Foley & Lardner and John S. Skilton, Milwaukee, Wis., amicus curiae for Minnesota Brewers Assn.

PETERSON, Justice.

The issue for resolution in this case is whether the classifications established by Minn.St. 340.47, subd. 2, distinguishing between fermented malt beverages produced by brewers with brewing production facilities in Minnesota and fermented malt beverages produced by brewers having no brewing production facilities in Minnesota contravenes the equal protection guarantees contained in Minn.Const. art. 1, § 2, and art. 10, § 1.

Plaintiff, Miller Brewing Company, filed claims for refund with the Minnesota Department of Revenue for the taxable periods July 1, 1973, through June 30, 1974, and

July 1, 1974, through June 30, 1975. The refunds requested, $99,992 and $97,659, respectively, constituted the additional excise tax paid by plaintiff in excess of the amount it would have paid had it been taxed equally with brewers having production facilities in Minnesota. The commissioner denied the claims. Plaintiff then commenced this litigation asserting that the tax statute unconstitutionally discriminates against its fermented malt beverages which originate outside Minnesota. The district court granted the state's motion for summary judgment, based upon stipulated facts, and this appeal followed.

Minnesota imposes a tax upon the sale of fermented malt beverages in Minnesota. A partial and limited credit is provided for the products of brewers producing and selling beverages in Minnesota. At all times relevant to this appeal, the applicable statute, § 340.47, subd. 2, provided as follows:

"An excise tax is hereby assessed, imposed, and levied upon the sale, either directly or indirectly of fermented malt beverages other than for shipment in interstate or foreign commerce. * * * Such tax shall be levied and collected at the rate of $2 per barrel of 31 gallons, containing not more than 3.2 percent of alcohol by weight, and a tax of $4 per barrel of 31 gallons containing more than 3.2 percent of alcohol by weight, and at a proportional rate for fractional parts thereof. All the receipts from these taxes shall be paid into the general fund by the liquor control commissioner. *Any brewer producing and selling within this state fermented malt beverages shall receive a credit of 50 percent of the tax on the first 40,000 barrels containing not more than 3.2 percent of alcohol by weight, and a credit of 50 percent of the tax on the first 40,000 barrels containing more than 3.2 percent of alcohol by weight.*"[1] (Italics supplied.)

Plaintiff is a Wisconsin corporation with no brewing facilities in Minnesota. Because the fermented malt beverages sold by plaintiff within the state of Minnesota are not produced in Minnesota, it was required to pay $197,651 more in excise taxes upon its products during the two subject years than it would have paid had it been taxed equally with brewers having production facilities in Minnesota. Brewers selling identical products produced in Minnesota were entitled during the two subject years to a maximum of $120,000 in credits per year against their excise tax liability.

The credit provisions of § 340.47, subd. 2, establish two classifications. The first classification includes fermented malt beverages produced by brewers with breweries located within Minnesota. A 50-percent credit is allowed against the excise tax imposed upon these beverages. The credit is available only on a limited number of barrels per year. The second classification includes fermented malt beverages produced by brewers who have no breweries located in Minnesota. No credit is allowed against the excise tax imposed upon these beverages. The touchstone of the classifications is the location of the production facilities. Because it is clear by reason of the Twenty-first Amendment that there is no federal constitutional question involved in the present case,[2] the sole issue for this

---

1. The credit provision contained in the last sentence of the statute was added by L.1973, c. 483. Subsequently, L.1976, c. 189, § 1, amended the last sentence of subd. 2 as follows: "* * * Any brewer producing and selling within this state fermented malt beverages shall receive a credit of $2 per barrel on the first 75,000 barrels, regardless of alcoholic content." Laws 1976, c. 189, § 2, added subd. 2a as follows: "Subdivision 2 is in effect on July 1, 1976. On August 15, 1976, and on the 15th day of each month thereafter, Minnesota brewers may take the credit authorized by subdivision 2, but the total credit allowed shall not exceed the allowable credit on more than 75,000 barrels produced and sold in Minnesota in any fiscal year beginning July 1, 1976."

2. No federal constitutional question is involved because it is well established that the United States Constitution permits states to discriminate against alcoholic beverages imported from out of state. *Indianapolis Brewing Co. v. Liquor Control Comm.,* 305 U.S. 391, 59 S.Ct. 254, 83 L.Ed. 243 (1939); *Mahoney v. Joseph Triner Corp.,* 304 U.S. 401, 58 S.Ct. 952, 82 L.Ed. 1424 (1938); *State Bd. of Equalization v. Young's Market Co.,* 299 U.S. 59, 57 S.Ct. 77,

court is whether the classifications established by the statute contravene the equal protection guarantees contained in Minn. Const. art. 1, § 2, and art. 10, § 1.[3]

Resolution of the constitutional issue raised in this case is governed by well-established principles. Every presumption is invoked in favor of the constitutionality of a statute. *Reed v. Bjornson,* 191 Minn. 254, 253 N.W. 102 (1934). The power of this court to declare a statute unconstitutional is to be exercised only when absolutely necessary and with extreme caution. *Schwartz v. Talmo,* 295 Minn. 356, 363, 205 N.W.2d 318, 323, appeal dismissed, 414 U.S. 803, 94 S.Ct. 130, 38 L.Ed.2d 39 (1973). A statute will not be declared unconstitutional unless the party challenging it demonstrates beyond a reasonable doubt that the statute violates some constitutional provision. *Head v. Special School Dist. No. 1,* 288 Minn. 496, 182 N.W.2d 887 (1970), certiorari denied sub nom. *Minneapolis Federation of Teachers, Local No. 59 v. Spannaus,* 404 U.S. 886, 92 S.Ct. 196, 30 L.Ed.2d 168 (1971).

The test to determine the constitutionality of statutory classifications includes three primary elements: (1) The distinctions which separate those included within the classification from those excluded must not be manifestly arbitrary or fanciful but must be genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs; (2) the classification must be genuine or relevant to the purpose of the law; that is, there must be an evident connection between the distinctive needs peculiar to the class and the prescribed remedy; (3) the purpose of the statute must be one that the state can legitimately attempt to achieve. *Schwartz v. Talmo, supra; Montgomery Ward & Co., Inc. v. Commr. of Taxation,* 216 Minn. 307, 12 N.W.2d 625 (1943).

These three elements are satisfied in § 340.47, subd. 2. First, there are substantial differences between in-state and out-of-state breweries that provide a natural and reasonable basis for separate classifications. Brewers with production facilities in Minnesota contribute substantially to Minnesota's economy. Breweries located in Minnesota constitute capital investment in the Minnesota economy. Minnesota breweries provide employment opportunities within Minnesota for Minnesota citizens. Minnesota breweries purchase Minnesota industrial and agricultural products. Similarly, there are tax differences between the in-state and out-of-state breweries. Minnesota property tax is paid only on breweries located in Minnesota, and Minnesota sales and use tax is paid only on the plant and equipment of breweries located in Minnesota. Minnesota brewers pay an annual Minnesota license tax of $1,000, while non-Minnesota brewers pay only a $100 fee. Additional-

---

81 L.Ed. 38 (1936). In his concurring opinion in *United States v. Frankfort Distilleries,* 324 U.S. 293, 300, 65 S.Ct. 661, 665, 89 L.Ed. 951, 957 (1945), Mr. Justice Frankfurter commented on the effect of the Twenty-first Amendment on guarantees otherwise provided by the Commerce Clause of the United States Constitution: "The Twenty-First Amendment made a fundamental change, as to control of the liquor traffic, in the constitutional relations between the States and national authority. Before that Amendment—disregarding the interlude of the Eighteenth Amendment—alcohol was for constitutional purposes treated in the abstract as an article of commerce just like peanuts and potatoes. As a result, the power of the States to control the liquor traffic was subordinated to the right of free trade across state lines as embodied in the Commerce Clause. The Twenty-First Amendment reversed this legal situation by subordinating rights under the Com-

merce Clause to the power of a State to control effectively, the traffic in liquor within its borders * * *."

**3.** Minn.Const. art. 1, § 2, provides: "No member of this state shall be. disfranchised or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers." Minn. Const. art. 10, § 1, provides: "Taxes shall be uniform upon the same class of subjects and shall be levied and collected for public purposes * * *." This constitutional provision, requiring uniformity in respect to taxation, is not more restrictive than the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. *Reed v. Bjornson,* 191 Minn. 254, 253 N.W. 102 (1934).

ly, Minnesota brewers pay substantially more of the social costs resulting from the sale of beer in Minnesota, such as costs for law enforcement and welfare, than non-Minnesota brewers even though all brewers benefit equally from being able to sell beer in this state. The economic and tax differences between in-state and out-of-state breweries provide a natural and reasonable basis for separate classifications.

Second, the classifications are reasonably related to the purpose of the statute. Section 340.47, subd. 2, provides tax relief to brewers having brewing facilities in Minnesota. Its obvious purpose is to promote the economic health of the few remaining Minnesota breweries and to thereby retain for Minnesota the economic advantages arising from their continued operation. The statute also encourages out-of-state brewers to locate production facilities in Minnesota. The statute is reasonably related to these purposes because its logical effect is to reward brewers for locating their plants within this state, thereby investing capital within Minnesota for creating jobs and for generating taxable income for in-state purposes. It also encourages out-of-state brewers to locate plants within Minnesota to achieve the same reward and thereby make the same contribution to Minnesota's economy.

Third, the purpose of the statute is one which this state can legitimately attempt to achieve. As we noted in *Montgomery Ward & Co., Inc. v. Commr. of Taxation, supra,* a state may classify for the purpose of encouraging and assisting industry within its borders.[4]

■ Plaintiff's primary argument is that the equal protection guarantees of Minn.

Const. art. 1, § 2, and art. 10, § 1, do not permit any type of discrimination based upon origin of a product. In effect, plaintiff contends this court has repeatedly held classification by product origin to be inherently arbitrary. We are not persuaded by this argument because the cases relied upon by plaintiff do not satisfactorily establish its position.

Plaintiff cites, for example, our opinion in *Federal Distillers, Inc. v. State,* 304 Minn. 28, 229 N.W.2d 144, appeals dismissed sub nom. *Griggs, Cooper & Co., Inc. v. Novak* and *Heaven Hill Distilleries, Inc. v. Novak,* 423 U.S. 908, 96 S.Ct. 209, 210, 46 L.Ed.2d 137 (1975), as an indication that we will not allow the Minnesota legislature to treat products from other states less favorably than products originating in Minnesota. That case involved the constitutionality of Minn.St. 304.144, a statute requiring all licensed importers of liquor to offer their products for sale on an equal basis to all Minnesota wholesalers. Out-of-state importers argued that the statute and regulations promulgated thereunder treated a domestic importer, Ed Phillips & Sons Company (Phillips), different from out-of-state importers and therefore denied them equal protection. In responding to this argument, we stated:

"They [out-of-state importers] insist that the statute cannot be construed to include Phillips in view of the fact that Phillips does not hold a license under § 340.133 and, under the commission's regulations existing at the time of trial, an 'importer' was defined as 'any out-of-state distiller.' In so arguing, plaintiffs are urging a construction of the statute which would call its constitutionality into question. * * *

---

4. We note the following statutes from other states provide for excise taxes on alcoholic beverages that discriminate in favor of locally produced beverages and against those produced in other states: Ark.Stat.Ann. §§ 48–402–637; Conn.Gen.Stat.Ann. § 12–451; Fla.Stat. §§ 564.06, 565.12; Ga.Code, § 58–803; Ill.Ann. Stat. ch. 43, § 158 (Smith-Hurd); Iowa Code § 123.146; Ky.Rev.Stat. § 243.720; La.Rev. Stat.Ann. § 26–342; Me.Rev.Stat.Ann. tit. 28, §§ 452, 501; Mich.Comp.Laws, § 436.16a; Miss. Code Ann. § 27–71–7; N.C.Gen.Stat.

§ 105–113.86(*o*), .95; Ohio Rev.Code Ann. § 4301.54 (Page); Or.Rev.Stat. § 473.030; 47 Pa.Cons.Stat.Ann. §§ 105(b), 112.1 (Purdon); R.I. Gen.Laws, § 3–10–17; S.C.Code, § 12–21–1020, 1040; S.D.Compiled Laws Ann. § 35–5–3.1; Tenn.Code Ann. § 57–120, 1977 Tenn.Pub. Acts ch. 126; Tax.Alco. Bev.Code Ann. tit. 5, § 203.08 (Vernon); Wis.Stat. § 139.03(2t).

Absent more detailed information, we do not draw any conclusions from these statutes except to note that disparate state tax treatment in the industry is not unique to Minnesota.

"The trial court's construction of the statute to include Phillips as a 'licensed importer' is reasonable. * * * Mindful of the rule that a statute must be construed to save its constitutionality, we hold the trial court's construction to be correct. * * * Therefore, plaintiffs' equal protection claim cannot be sustained." 304 Minn. 42, 229 N.W.2d 155.

The opinion in *Federal Distillers* does not support plaintiff's position in the present case. We there held that under the statute as construed by the district court the equal protection question did not arise; we accordingly did not reach or discuss the merits of the constitutional question argued by plaintiffs in this case.

Furthermore, if we had determined that the statute in Federal Distillers could not have constitutionally applied to only out-of-state importers, such a conclusion would have rested upon reasoning inapplicable to the present case. Such a determination would have rested upon the fact that such a limited application would not have been reasonably related to the purpose of the statute. The purpose of the statute in Federal Distillers was to eliminate monopolistic practices and price fixing, to promote intrabrand price competition, and to promote lower retail prices. If the statute had been limited only to out-of-state importers and not included the domestic importer, Phillips, the statutory classifications would have promoted monopoly and thus have worked contrary to the statutory purpose. Therefore, such a limitation would not have been reasonably related to the statutory purpose. In the present case, the statutory classifications clearly relate to the statutory purpose of promoting the beer industry in Minnesota.

Likewise, plaintiff places great reliance on this court's opinion in *State v. Ernst,* 209 Minn. 586, 297 N.W. 24 (1941). In *Ernst,* this court struck down a statute requiring the filing of a bond and payment of a $5 fee before any used motor vehicle brought into the state for the purpose of sale or resale could be offered for sale or placed upon a used car lot. Plaintiff contends this court

concluded in its opinion in *Ernst* that the Minnesota Constitution prevented such discrimination even though the product was no longer necessarily protected by the commerce clause of the United States Constitution at the time the discrimination occurred.

This court's decision in *Ernst* was decided on a commerce clause basis; any discussion of the equal protection guarantees of the United States and Minnesota Constitutions was dicta. For example, this court relied heavily on the decision in *Park McLain, Inc. v. Hoey,* 19 F.Supp. 990 (E.D.N.C.1937), a case involving a North Carolina statute nearly exact to the Minnesota statute in *Ernst.* In *Hoey,* the federal district court held that the statute was unconstitutional because it was a burden on interstate commerce. However, state regulations discriminating against imported liquor, such as § 340.07, subd. 2, do not violate the commerce clause. See, *Indianapolis Brewing Co. v. Liquor Control Comm'n,* 305 U.S. 391, 59 S.Ct. 254, 83 L.Ed. 243 (1939); *State Bd. of Equalization v. Young's Market Co.,* 299 U.S. 59, 57 S.Ct. 77, 81 L.Ed. 38 (1936). Plaintiff mistakenly attaches great importance to the following statement from this court's opinion in *Ernst.*

"* * * It is the contention of the state that before the incidence of the provisions of c. 284 upon the property in question it has come to rest and is no longer within the protection of the commerce clause and that it has become a party of the mass of intrastate property. It may be subject to a nondiscriminatory tax or regulation, but property cannot be discriminated against on account of its origin without the state. *Brimmer v. Rebman,* 138 U.S. 78, 82, 11 S.Ct. 213, 34 L.Ed. 862; *Minnesota v. Barber,* 136 U.S. 313, 10 S.Ct. 862, 34 L.Ed. 455; *Crutcher v. Kentucky,* 141 U.S. 47, 62, 11 S.Ct. 851, 35 L.Ed. 649." 209 Minn. 589, 297 N.W. 25.

The cases cited by this court after this statement were all decided on a commerce clause basis and not on equal protection grounds. In effect, these cited cases held

that the property in question was still covered by the commerce clause.[5]

This court's opinion in *Ernst* does not support the proposition that any classification of property based upon its point of origin violates the equal protection guarantees of the Minnesota Constitution. Any discussion of equal protection was not part of the *Ernst* holding and the opinion did not establish either that a burden on interstate commerce or an in-state versus out-of-state tax classification was a *per se* violation of the equal protection provisions of the Minnesota Constitution.

Finally, plaintiffs' reliance on *State v. Schmidt*, 280 Minn. 281, 159 N.W.2d 113 (1968), is also misplaced. We held unconstitutional in that case a city ordinance imposing a bonding requirement on itinerant drummers who were not residents of the county. The statute in the present case does not touch upon residence. A nonresident corporation may locate and operate one of its breweries in Minnesota and thereby qualify for a credit. A Minnesota corporation may not operate a brewery in Minnesota and therefore not qualify for a credit. Likewise, in *Schmidt* we were unable to articulate a purpose for differentiating between resident and nonresident door-to-door solicitors. We noted the purpose for these types of restrictions was to prevent peddling from becoming a public nuisance but questioned whether local solicitors were any less a nuisance than nonresident solicitors. In the present case, it is clear the state legislature had reasonable grounds for taxing brewers without production facilities in Minnesota different from brewers with Minnesota production facilities.

We hold, therefore, that the classifications established by § 340.47, subd. 2, do not contravene the equal protection guarantees contained in Minn.Const. art. 1, § 2, and art. 10, § 1.

Affirmed.

5. Moreover, the facts in the present case differ greatly from the facts in *State v. Ernst*, 209 Minn. 586, 297 N.W. 24 (1941). *Ernst* dealt with a criminal prosecution for sale of a used

motor vehicle in Minnesota without the payment of required bonds and fees. The present case involves taxation of out-of-state liquor.