MINNESOTA AUTOMATIC MER-
CHANDISING COUNCIL, et
al., Appellants,

v.

Daniel A. SALOMONE, as Commission-
er of the Minnesota Department of
Revenue, et al., Respondents.

No. C0–03–65.

Supreme Court of Minnesota.

June 24, 2004.

Eric J. Magnuson (# 66412), Peter Gray (# 25809X), Rider Bennett, LLP, Minneapolis, MN, for Appellant.

Mike Hatch, Office of the Attorney General, James W. Neher (# 77379), St. Paul, MN, for Respondent.

Kevin Walli (# 183866), Fryberger, Buchanan, Smith et al., St. Paul, MN, for Amicus Curiae Minnesota Milk Producers Association.

Patryk J. Drescher (# 293842), Nicole L. Druckrey (# 0332355), Halleland Lewis Nilan et al., Minneapolis, MN, for Amicus Curiae The National Automatic Merchandising Association.

## OPINION

ANDERSON, RUSSELL A., Justice.

The issue for resolution in this case is whether the taxation of sales of food through vending machines violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution or the Uniformity Clause of the Minnesota Constitution. We conclude that it does not.

The Minnesota Automatic Merchandising Council (MAMC) is a nonprofit membership organization made up of corporations, individuals and partnerships that operate and supply vending machines. MSY Enterprises, d/b/a Apple Automatic Food Service (Apple), a member of MAMC, is a Minnesota corporation that operates and maintains 550 vending machines located in Minnesota. MAMC members are engaged in the business of selling food products through vending machines located in Minnesota. Examples of these food products include prepackaged sandwiches and muffins, bottled water, cookies, potato chips, corn chips and other chips, milk, fruit juice, pastry products, Ramen soup, microwaveable and popped popcorn, pretzels, soups and stews such as chili, boxed entrées such as boxed lasagna, Slim Fast, granola bars and breakfast bars. Apple's vending machines are located in a variety of settings, including office buildings, manufacturing plants, shopping areas and car dealerships. In Minnetonka, there are two sites where Apple's vending machines are located in an office building near a cafeteria that sells some of the same items that are sold through Apple's vending machines.

MAMC and Apple commenced a declaratory judgment action in Ramsey County District Court against the state, the Commissioner of Revenue and the Department of Revenue, challenging the constitutionality of the 2001 amendments to the state's sales and use tax laws as they apply to the sales of food products through vending machines. MAMC and Apple contended that the imposition of a sales tax on vending machine food sales while exempting sales of food by various other retailers

under the 2001 amendments contravened the equal protection guarantees of the federal constitution and the uniformity guarantees of the state constitution. On cross-motions, the district court granted summary judgment for the state, concluding that the taxation on vending machine food sales violated neither the federal nor the state constitution. The court of appeals affirmed. *Minnesota Automatic Merch. Council v. Smith,* 667 N.W.2d 159, 160 (Minn.2003). We granted further review.

## I.

Minnesota's sales tax is imposed on gross receipts from "retail sales." Minn. Stat. § 297A.62, subd. 1 (2002). Retail sales are generally defined as sales for any purpose other than resale. Minn.Stat. § 297.A61, subd. 4(a) (2002). Prior to the 2001 statutory amendments at issue in this case, sales of prepared food or meals and sales of food through vending machines were taxed. Minn.Stat. § 297A.61, subd. 3(d)(1) (2000) (food or drinks prepared by retailer for immediate consumption on retailer's premises); *id.* subd. 3(d)(2) (2000) (food or drinks prepared by retailer for immediate consumption on or off retailer's premises); *id.,* subd. 3(d)(7) (2000) (all food from vending machines).[1] Sales of food products were exempt. Minn.Stat. § 297A.67, subd. 2 (2000).[2]

**1.** Minnesota Statutes section 297A.61, subd. 3(d) (2000) provided:

Sale and purchase include the furnishing, preparing, or serving for a consideration of food or drinks. Notwithstanding section 297A.67 subdivision 2, taxable food or drinks include, but are not limited to, the following:

(1) food or drinks sold by the retailer for immediate consumption on the retailer's premises. Food and drinks sold within a building or grounds that require an admission charge for entrance are presumed to be sold for consumption on the premises;

(2) food or drinks prepared by the retailer for immediate consumption either on or off the retailer's premises. For purposes of this subdivision, "food or drinks prepared for immediate consumption" means any food product upon which an act of preparation including, but not limited to, cooking, mixing, sandwich making, blending, heating, or pouring has been performed by the retailer so the food product may be immediately consumed by the purchaser;

(3) ice cream, ice milk, frozen yogurt products, or frozen novelties sold in single or individual servings including, but not limited to, cones, sundaes, and snow cones;

(4) soft drinks and other beverages, including all carbonated and noncarbonated beverages or drinks sold in liquid form, but not including beverages or drinks which contain milk or milk products, beverages or drinks containing 15 or more percent fruit juice, and noncarbonated and noneffervescent bottled water sold in individual containers of one-half gallon or more in size;

(5) gum, candy, and candy products;

(6) ice;

(7) all food sold from vending machines;

(8) all food for immediate consumption sold from concession stands and vehicles;

(9) party trays;

(10) all meals and single servings of packaged snack food sold in restaurants and bars; and

(11) bakery products that are:

(i) prepared by the retailer for consumption on the retailer's premises;

(ii) sold at a place that charges admission;

(iii) sold from vending machines; or

(iv) sold in single or individual servings from concession stands, vehicles, bars, and restaurants.

For purposes of this paragraph, "single or individual servings" does not include products when sold in bulk containers or bulk packaging.

For purposes of this paragraph, "premises" means the total space and facilities, including buildings, grounds, and parking lots that are made available or that are available for use by the retailer or customer for the purpose of sale or consumption of prepared food and drinks. The premises of a caterer is the place where the catered food or drinks are served.

**2.** Minnesota Statutes section 297A.67, subd. 2 (2000) provided:

Food products including, but not limited to, cereal and cereal products, butter, cheese, milk and milk products, oleomargarine, meat and meat products, fish and fish products,

For sales of food made after December 31, 2001, sales of prepared food and sales of food through vending machines are taxed. Act of June 30, 2001, ch. 5, art. 12, § 8, 2001 Minn. Laws 1st Spec. Sess. 1670–71 (codified at Minn.Stat. § 297A.61, subd. 3(d) (2002)).[3] Prepared food means food sold with eating utensils, food sold in a heated state or heated by the seller or a mixture of food ingredients for sale as a single item. Act of June 30, 2001, ch. 5, art. 12, § 8, 2001 Minn. Laws 1st Spec. Sess. 1682–83 (codified at Minn.Stat. § 297A.61, subd. 31 (2002)).[4] Sales of food and food ingredients are exempt. Act of June 30, 2001, ch. 5, art. 12, § 8, 2001 Minn. Laws 1st Spec. Sess. 1687 (codified at 297A.67, subd. 2 (2002)).[5]

eggs and eggs products, vegetables and vegetable products, fruit and fruit products, spices and salt, sugar and sugar products, coffee and coffee substitutes, tea, and cocoa and cocoa products are exempt.

3. Minnesota Statutes section 297A.61, subd. 3(d) (2002) provides:

Sale and purchase include the preparing for a consideration of food. Notwithstanding section 297A.67, subdivision 2, taxable food includes, but is not limited to, the following:
    (1) prepared food sold by the retailer;
    (2) soft drinks;
    (3) candy; and
    (4) all food sold through vending machines.

4. Minnesota Statutes section 297A.61, subd. 31 (2002) provides:

"Prepared food" means food that meets either of the following conditions:
    (1) the food is sold with eating utensils provided by the seller, including plates, knives, forks, spoons, glasses, cups, napkins, or straws; or
    (2) the food is sold in a heated state or heated by the seller or two or more food ingredients are mixed or combined by the seller for sale as a single item, except for:
        (i) bakery items, including, but not limited to, bread, rolls, buns, biscuits, bagels, croissants, pastries, donuts, danish, cakes, tortes, pies, tarts, muffins, bars, cookies, tortillas;
        (ii) ready-to-eat meat and seafood in an unheated state sold by weight;
        (iii) eggs, fish, meat, poultry, and foods containing these raw animal foods requiring cooking by the consumer as recommended by the Food and Drug Administration in chapter 3, part 401.11 of its food code so as to prevent food borne illnesses; or
        (iv) food that is only sliced, repackaged, or pasteurized by the seller.

5. Minnesota Statutes section 297A.67, subd. 2 (2002) provides:

Food and food ingredients are exempt. For purposes of this subdivision, "food" and "food ingredients" mean substances, whether in liquid, concentrated, solid, frozen, dried, or dehydrated form, that are sold for ingestion or chewing by humans and are consumed for their taste or nutritional value. Food and food ingredients exempt under this subdivision do not include candy, soft drinks, food sold through vending machines, and prepared foods. Food and food ingredients do not include alcoholic beverages, dietary supplements, and tobacco. For purposes of this subdivision, "alcoholic beverages" means beverages that are suitable for human consumption and contain one-half of one percent or more of alcohol by volume. For purposes of this subdivision, "tobacco" means cigarettes, cigars, chewing or pipe tobacco, or any other item that contains tobacco. For purposes of this subdivision, "dietary supplements" means any product, other than tobacco, intended to supplement the diet that:
    (1) contains one or more of the following dietary ingredients:
        (i) a vitamin;
        (ii) a mineral;
        (iii) an herb or other botanical;
        (iv) an amino acid;
        (v) a dietary substance for use by humans to supplement the diet by increasing the total dietary intake; and
        (vi) a concentrate, metabolite, constituent, extract, or combination of any ingredient described in items (i) to (v);
    (2) is intended for ingestion in tablet, capsule, powder, softgel, gelcap, or liquid form, or if not intended for ingestion in such form, is not represented as conventional food and is not represented for use as a sole item of a meal or of the diet; and
    (3) is required to be labeled as a dietary supplement, identifiable by the supplement facts box found on the label and as required pursuant to Code of Federal Regulations, title 21, section 101.36.

The 2001 amendments relating to the taxation on food sales were a part of the legislature's adoption of the Uniform Sales and Use Tax Administration Act (Uniform Act) proposed by the Multi–State Streamlined Sales Tax Project. Act of June 30, 2001, ch. 5, art. 12, § 84, 2001 Minn. Laws 1st Spec. Sess. 1718 (codified at Minn.Stat. § 297A.995 (2002)). The purpose of the Uniform Act is to "simplify and modernize sales and use tax administration in order to substantially reduce the burden of tax compliance." Minn.Stat. § 297A.995, subd. 3 (2002). The adoption of the Uniform Act allows the state to enter into the Streamlined Sales and Use Tax Agreement that sets out uniform definitions for the administration of states' sales and use tax laws. Minn.Stat. § 297A.995, subd. 4 (2002).[6]

## II.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o State shall * * * deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. The Uniformity Clause of the Minnesota Constitution provides that "[t]axes shall be uniform upon the same class of subjects and shall be levied and collected for public purposes[.]" Minn. Const. art. X, § 1. The scope of protection afforded under these two provisions is identical. *Lutheran Bhd. Research Corp. v. Comm'r of Revenue*, 656 N.W.2d 375, 382 (Minn.2003) (citing *Kuiters v. County of Freeborn*, 430 N.W.2d 461, 463 (Minn.1988)).

■■■ Resolution of the constitutional issues raised in this case are governed by well established principles. Every presumption is invoked in favor of the constitutionality of a statute. *Scott v. Minne-*

apolis *Police Relief Ass'n*, 615 N.W.2d 66, 73 (Minn.2000) (citing *Miller Brewing Co. v. State*, 284 N.W.2d 353, 356 (Minn.1979)). The power of this court to declare a statute unconstitutional "is to be exercised only when absolutely necessary, and then with extreme caution." *Wegan v. Village of Lexington*, 309 N.W.2d 273, 279 (Minn. 1981) (quoting *Schwartz v. Talmo*, 295 Minn. 356, 363, 205 N.W.2d 318, 323, *appeal dismissed*, 414 U.S. 803, 94 S.Ct. 130, 38 L.Ed.2d 39 (1973)). A statute will not be declared unconstitutional unless the party challenging it demonstrates beyond a reasonable doubt that the statute violates some constitutional provision. *Miller Brewing*, 284 N.W.2d at 356 (citing *Head v. Special Sch. Dist. No. 1*, 288 Minn. 496, 505, 182 N.W.2d 887, 893 (1970)).

■■■ The test to determine the constitutionality of statutory classifications includes three primary elements:

(1) The distinctions which separate those included within the classification from those excluded must not be manifestly arbitrary or fanciful but must be genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs; (2) the classification must be genuine or relevant to the purpose of the law; that is, there must be an evident connection between the distinctive needs peculiar to the class and the prescribed remedy; (3) the purpose of the statute must be one that the state can legitimately attempt to achieve.

*Lutheran Bhd.*, 656 N.W.2d at 382 (Minn. 2003) (quoting *Miller Brewing*, 284 N.W.2d at 356; *see also Schwartz v. Talmo*, 295 Minn. 356, 362, 205 N.W.2d 318, 322 (1973)). In that "taxation policy is peculiarly a legislative function, involving

---

**6.** The Uniform Act provides for uniform rules and definitions, including uniform sourcing rules for determination of the location of tax-

able transactions. Minn.Stat. § 297A.995, subd. 6 (2002).

political give-and-take, the courts are very deferential in their review of tax legislation." *Walker v. Zuehlke,* 642 N.W.2d 745, 751 (Minn.2002) (citing *Metro. Sports Facilities Comm'n v. County of Hennepin,* 478 N.W.2d 487, 489 (Minn.1991)). A statutory tax classification will be sustained as having a rational basis if "any conceivable state of facts supports it." *Rio Vista Non–Profit Housing Corp. v. County of Ramsey,* 335 N.W.2d 242, 245–46 (Minn. 1983).

### III.

MAMC and Apple contend that the disparate tax treatment of similar prepackaged food items based on whether the item was purchased from a vending machine or a convenience store constitutes an arbitrary classification. The intent behind the legislation on the taxation of certain foods was to tax food purchased at a restaurant as "luxuries" but to exempt food purchased at a grocery store as "necessities." *Associated Food Servs., Inc. v. Comm'r of Taxation,* 298 Minn. 277, 282, 216 N.W.2d 253, 256 (1974). In *Associated Food* we rejected the similarity-of-products test urged by MAMC and other vending machine operators, holding that the test for taxability was whether a vending machine, in its method of merchandising and the consumer market it served, was more like a grocery store or more like a restaurant.

> If similarity of product is the test, restaurants could not be taxed either, without violating the equal protection clause, despite the legislative determination, acknowledged by all parties, that going to a restaurant is a taxable luxury and purchasing food at a grocery store is a nontaxable necessity. While grocery stores and vending machines do sell some of the same products, this factor alone does not necessarily make them part of the same class for sales-tax purposes. Rather, the test should be whether a vending machine, in its meth-

od of merchandising and the consumer market it serves, is more like a grocery store or a restaurant.

*Associated Food,* 298 Minn. at 282, 216 N.W.2d at 256. We went on to say that the method of merchandising provided a reasonable distinction between food retailers that sell taxable food and those that sell exempt food even though retailers of both groups were capable of selling the same products.

> [T]here is a reasonable distinction which divides the two groups [those that sell taxable food and those that sell exempt food]—method of merchandising. By examining a retailer's method of merchandising, one can tell whether that retailer performs the function of a grocer or restaurant. This secondary classification made on the basis of method of merchandising helps accomplish the legislative purpose of taxing food only when sold as a luxury and, consequently, avoiding a regressive tax on necessities.

*Associated Food,* 298 Minn. at 284, 216 N.W.2d at 257.

In *Associated Food,* in examining the method of merchandising of vending machine operators, we concluded that vending machines were more like restaurants. The self-service, coin-operated vending machines were located generally in offices, industrial facilities and commercial buildings; and the record reflected that vending machine operators considered themselves to be a part of the fast-food service industry. Such locations and services permitted "the inference that vending machines are situated so as to supply consumers with refreshment where they work. Thus, their major competition is the coffee shop or snack bar—not the grocery store." *Id.* at 283, 216 N.W.2d at 257.

Here, in applying the *Associated Food* method-of-merchandising and consumer-market-served test, the lower courts concluded that the sales tax on vending ma-

chine sales under the 2001 tax scheme was neither a denial of equal protection nor of uniformity. MAMC and Apple assert that the "necessity/later vs. luxury/immediate consumption dichotomy" that was articulated in *Associated Foods* has been discarded by the 2001 amendments since coffee shops and snack bars can now sell certain food items "tax exempt." The state counters that the amendments to the tax statutes do not make any material changes to the classification of food sales for sales tax purposes because vending machine sales were, and continue to be, subject to sales tax. The state points out that distinctions are still in place because the sale of "prepared foods" by restaurants and sales of food through vending machines are both treated as taxable sales of food made for immediate consumption and that the sale of food and food ingredients by grocery stores are treated as tax-exempt sales of food for later consumption.

■ The 2001 amendments replaced prior statutory language describing taxable food as "food prepared for immediate consumption" with the term "prepared food," while food sold through vending machines remained subject to taxation. Act of June 30, 2001, ch. 5, art. 12, § 8, 2001 Minn. Laws. 1st Spec. Sess. 1671 (codified at Minn.Stat. § 297A.61, subd. 3(d) (2002)). The 2001 amendments for exempt food replaced the previous list of exempt food products. *Id.* As the lower courts concluded, the general classification of food retailers into two groups for purposes of taxation by taxing restaurant-type food sales but not grocery-type food sales has not changed; and the distinction which divides the two groups, method of merchandising, is likewise unchanged. The distinction is genuine and substantial and serves the legislative purpose of taxing food when sold as a luxury and avoiding a regressive tax on necessities, thus satisfying the first two *Miller Brewing* elements for determining the constitutionality of statutory classifications. As for the third element, the purpose of the statute is one which the state can legitimately attempt to achieve— avoidance of a regressive tax. *See Associated Food*, 298 Minn. at 284, 216 N.W.2d at 257.

It is true, as MAMC and Apple assert, that with the exception of soft drinks and candy, under the 2001 amendments food is generally exempt from sales tax unless it is sold as "prepared food" whether by a restaurant or by a grocery store or sold through a vending machine. But the operative distinction for tax classification purposes is not between vending machine food sales and all other food sales. Rather, the distinction remains between grocery-type food sales and restaurant-type food sales. That a grocery store, whose main line of business is the sale of tax-exempt food, may function as a restaurant in the sale of taxable prepared food and that a restaurant, whose main line of business is the sale of taxable prepared food, may function as a grocery store in the sale of tax-exempt grocery food, does not realign in any significant way the general distinction based on method of merchandising and consumer market served for sales tax purposes.

As the record in this case reflects, vending machine operators typically provide a bank of vending machines in locations such as office buildings and manufacturing plants where they are used by employees who are eating lunch or on a break. The vending machines are self-service, dispensing an item selected by the purchaser upon the insertion of currency. Such locations and services reflect that the machines are situated to supply consumers with immediate refreshment in places of employment and the like. Their competitors are still more likely to be restaurants, coffee shops or snack bars rather than grocery stores. *Associated Food*, 298 Minn. at 283, 216 N.W.2d at 257. It is also worth bearing in

mind that where the 2001 amendments to Minn.Stat. § 297A had as their purpose to "simplify and modernize sales and use tax administration in order to substantially reduce the burden of tax compliance," Minn. Stat. § 297A.995, subd. 3 (2002), it is unlikely that the legislature intended to alter the existing general classification of food retailers.

We have upheld many classifications in tax statutes against the challenge that they violate the Equal Protection Clause and the Uniformity Clause. *See Ruberto v. County of Washington,* 572 N.W.2d 293, 299 (Minn.1997) (upholding a statutory process that determined payback taxes by taking into account whether the property had any nonagricultural characteristics); *Lund v. Hennepin County,* 403 N.W.2d 617, 620 (Minn.1987) (upholding distinction between owners and renters in property tax classification); *Erie Mining Co. v. Comm'r of Revenue,* 343 N.W.2d 261, 269 (Minn.1984) (upholding two classifications of taconite property taxpayers); *Hegenes v. State,* 328 N.W.2d at 719, 722–23 (Minn. 1983) (upholding as constitutional the classification of nonhomestead residential properties for purposes of real estate taxation into those of three units or less and those properties with four or more units); *Petition of U.S. Steel Corp.,* 324 N.W.2d 638, 641–43 (Minn.1982) (upholding the retroactive assessment of taxes on iron ore for six-year period as constitutional); *Guilliams v. Comm'r of Revenue,* 299 N.W.2d 138, 142–44 (Minn.1980) (determining that the farm loss modification law was constitutional); *Miller Brewing,* 284 N.W.2d at 356–59 (allowing a 50 percent credit allowed against excise tax imposed on barrels of malt beverages produced by brewers with production facilities in the state).

We have stated that that "[e]ven if the classification scheme is imperfectly related to the legislature's objectives, imperfection is not a constitutional defect." *Westling v. County of Mille Lacs,* 581 N.W.2d 815, 822 (Minn.1998). We also held that "*any* legitimate purpose can support [a] tax." *Erie Mining Co.,* 343 N.W.2d at 268 (emphasis in original). As we explained recently in *Walker v. Zuehlke,*

> No scheme of taxation, whether the tax is imposed on property, income, or purchases of goods and services, has yet been devised which is free of all discriminatory impact. In such a complex arena in which no perfect alternatives exist, the Court does well not to impose too rigorous a standard of scrutiny lest all local fiscal schemes become subjects of criticism under the Equal Protection Clause.

642 N.W.2d at 751 (quoting *San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 40–41, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973)).

Of necessity, lines must be drawn for tax classification. For constitutional purposes, absolute equality and uniformity in taxation are not required. As Justice Holmes observed:

> When a legal distinction is determined, as no one doubts that it may be, between night and day, childhood and maturity, or any other extremes, a point has to be fixed or a line has to be drawn, or gradually picked out by successive decisions, to mark where the change takes place. Looked at by itself without regard to the necessity behind it the line or point seems arbitrary. It might as well or nearly as well be a little more to one side or the other. But when it is seen that a line or point there must be, and that there is no mathematical or logical way of fixing it precisely, the decision of the Legislature must be accepted unless we can say that it is very wide of any reasonable mark.

*Louisville Gas & Elec. Co. v. Coleman,* 277 U.S. 32, 41, 48 S.Ct. 423, 72 L.Ed. 770 (1928) (Holmes, J., dissenting).

We conclude that the line drawn by the legislature between retailers who sell taxable food and those that sell exempt food is not "wide of any reasonable mark" and is based on distinctions which are genuine and have a rational basis. We therefore hold that the imposition of a sales tax on sales of food through vending machines does not violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution or the Uniformity Clause of the Minnesota Constitution.

Affirmed.