**Jack M. SINGER, Relator,**

**Estate of Ruth Singer,
Appellant Below,**

v.

**COMMISSIONER OF REVENUE,
Respondent.**

**No. A11–2282.**

Supreme Court of Minnesota.

Aug. 1, 2012.

---

1. The court only imposed sentence on the first-degree murder conviction.

Jack M. Singer, St. Louis Park, MN, pro se.

Lori Swanson, Attorney General, Jeremy D. Eiden, Assistant Attorney General, St. Paul, MN, for respondent.

## OPINION

PAGE, Justice.

Following a trial, the Minnesota Tax Court affirmed an order of the Commissioner of Revenue calculating the value of the estate of Ruth Singer and assessing the estate the sum of $69,679.75 in taxes and interest. We affirm.

Ruth Singer died on May 26, 2008. Ruth's son, relator Jack M. Singer (Singer), is the personal representative of her estate. On February 24, 2009, Singer filed a Minnesota estate tax return claiming the estate owed no Minnesota estate tax, despite a federal gross estate of more than

$1.5 million. After reviewing the return, the Commissioner requested information from Singer to substantiate certain valuations and deductions. Singer declined to provide the requested information.

The Commissioner subsequently issued an order denying various claimed deductions and rejecting some claimed values for property of the estate. For example, in valuing the estate, Singer excluded the value of his mother's home, title to which Singer claimed to have acquired by adverse possession. The Commissioner included the value of the homestead in the value of the gross estate. In valuing the estate, Singer included only half of the value of a certain bank account in his mother's name, categorizing the funds in the account as jointly owned. The Commissioner determined that all of the funds in the account were part of Ruth Singer's estate. Singer valued certain stocks owned by his mother as of a date 6 months after her death; the Commissioner adjusted the value of those stocks to the date-of-death values. Singer also made various other deductions from the gross estate for which he provided no substantiation; the Commissioner rejected the unsubstantiated deductions. These adjustments resulted in an estate value of more than $1.5 million, against which the Commissioner assessed $69,679.75 in taxes and interest.

 Singer timely appealed to the tax court, which, after a hearing, affirmed the Commissioner's assessment. Singer filed a motion for amended findings of fact and conclusions of law and a new trial, raising constitutional and other issues. Singer requested that the tax court transfer the case to the district court for consideration of the constitutional issues he raised. The tax court stayed further proceedings and transferred the case to district court.[1] Pursuant to *Erie Mining Co. v. Commissioner of Revenue,* 343 N.W.2d 261, 264 (Minn.1984), the district court transferred the proceedings back to the tax court "with the District Court's full legal and equitable powers." The tax court denied Singer's motion for amended findings or a new trial and Singer appealed to our court.

We read Singer's brief as raising the following issues: (1) whether Minn.Stat. § 291.215 (2010) is unconstitutional; (2) whether an estate in Minnesota is required to substantiate deductions; (3) whether federal estate tax law preempts Minnesota estate tax law; (4) whether the Minnesota estate tax system affords estates valued under $2 million a reasonable amount of time to settle an estate; (5) whether the tax court had subject-matter jurisdiction to determine whether Singer obtained title to his mother's house through adverse possession; and (6) whether Singer was entitled to a hearing and judgment in district court when the tax court transferred the case to the district court to conduct an *Erie* shuffle.

 "Our review of a final decision of the tax court is limited and deferential." *Cont'l Retail, LLC v. Cnty. of Hennepin,* 801 N.W.2d 395, 398 (Minn.2011). In reviewing such decisions, we determine whether "(1) the tax court had jurisdiction, (2) the tax court decision was supported by the evidence and was in conformity with the law, and (3) the tax court committed

---

1. As an executive-branch court, the tax court lacks the authority to decide constitutional questions. When confronted with such questions, the tax court may stay the proceedings and refer the constitutional questions to the district court. The district court may subsequently retain jurisdiction to answer the constitutional questions or refer the case back to the tax court and grant the tax court subject-matter jurisdiction to rule on the constitutional questions. *See Erie Mining Co. v. Comm'r of Revenue,* 343 N.W.2d 261, 264 (Minn. 1984).

any other error of law." *McLane Minn., Inc. v. Comm'r of Revenue*, 773 N.W.2d 289, 292–93 (Minn.2009); *see also* Minn. Stat. § 271.10, subd. 1 (2010). When the underlying facts are not disputed, "we need only consider whether the law was properly applied." *McLane Minn., Inc.*, 773 N.W.2d at 293. We review de novo the tax court's conclusions of law and interpretation of statutes. *Id.*

## I.

■ Minnesota Statutes § 291.215, subd. 1, provides that "any elections made in valuing the federal gross estate shall be applicable in valuing the Minnesota gross estate." Singer contends that Minn.Stat. § 291.215 is unconstitutional as a regressive and non-uniform tax. We disagree.

For purposes of federal estate taxes, an estate may elect to value property "as of the date 6 months after the decedent's death," but only if the election decreases both the value of the gross estate and the taxes imposed upon the estate. 26 U.S.C. § 2032(a)(2), (c) (2006). Because the value of Singer's mother's gross estate was less than $2 million (whether valued as of the date of death or 6 months later), the estate owed no federal estate taxes. *See* 26 U.S.C. § 6018(a)(1) (2006) (requiring the filing of a federal estate tax return "[i]n all cases where the gross estate at the death of a citizen or resident exceeds the applicable exclusion amount in effect under section 2010(c)"); *see also* 26 U.S.C. § 2010(c) (2006) (noting that for decedents dying during 2008, the applicable exclusion amount is $2 million). The estate could not have elected the alternate valuation date because doing so would not have reduced the amount of the federal estate tax, which was zero under either valuation date. *See* 26 U.S.C. § 2032(c) (election of alternate valuation date must reduce both the value of the gross estate and the taxes

on the estate). The estate did not—and could not—have elected the alternate valuation date for federal estate tax purposes; therefore, it was barred from using the alternate valuation date for Minnesota estate tax purposes even if, as Singer contends, the estate decreased in value after the date of death.

■ Singer argues that the inability of smaller estates to elect the alternate valuation date results in Minnesota's estate tax being unconstitutionally regressive and non-uniform. We invoke every presumption in favor of a statute's constitutionality. *Minn. Automatic Merch. Council v. Salomone*, 682 N.W.2d 557, 561 (Minn.2004). A party arguing that a statute is unconstitutional bears the heavy burden of "demonstrat[ing] beyond a reasonable doubt that the statute violates some constitutional provision." *Id.* We are " 'very deferential' " in our review of tax legislation because " 'taxation policy is peculiarly a legislative function.' " *Id.* (quoting *Walker v. Zuehlke*, 642 N.W.2d 745, 751 (Minn.2002)).

■ A regressive tax is one that is "structured so that the effective tax rate decreases as the tax base increases.... A flat tax (such as the typical sales tax) is usu[ally] considered regressive—despite its constant rate—because it is more burdensome for low-income taxpayers than high-income taxpayers." *Black's Law Dictionary* 1498 (8th ed.2004). Even assuming (without deciding) that the application of section 291.215 results in a regressive tax, Singer has not established that regressive taxes are *per se* unconstitutional or that the taxes assessed against the estate in this case are unconstitutional simply because they are regressive.

■ The Minnesota Constitution requires that taxation be uniform "upon the same class of subjects." Minn. Const.

art. X, § 1; *see also Gen. Mills, Inc. v. Div. of Emp't & Sec. for Minn.*, 224 Minn. 306, 309, 28 N.W.2d 847, 849 (1947) (interpreting the Fourteenth Amendment to the U.S. Constitution as requiring uniform taxation upon the same class of subjects). But the constitution does not require absolute equality and uniformity. *Schober v. Comm'r of Revenue*, 778 N.W.2d 289, 293 (Minn.2010). Rather, whether a tax runs afoul of the uniformity requirement is governed by the three-part test from *Miller Brewing Co. v. State*, 284 N.W.2d 353, 356 (Minn.1979):

> The test to determine the constitutionality of statutory classifications includes three primary elements: (1) The distinctions which separate those included within the classification from those excluded must not be manifestly arbitrary or fanciful but must be genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs; (2) the classification must be genuine or relevant to the purpose of the law; that is, there must be an evident connection between the distinctive needs peculiar to the class and the prescribed remedy; (3) the purpose of the statute must be one that the state can legitimately attempt to achieve.

Singer has not met his heavy burden of establishing beyond a reasonable doubt that section 291.215 is unconstitutional, even if it is not uniform. In particular, Singer has not established that subjecting estates of different sizes to different valuation rules violates the uniformity requirement. That the state treats estates that are not required to file a federal estate tax return differently from those that are required to file a federal estate tax return does not by itself run afoul of the *Miller Brewing* test.

## II.

■ Second, Singer argues that the tax court erred in affirming the Commissioner's assessment, which rejected as unsubstantiated several claimed deductions from the value of the gross estate, because estates that are not required to pay federal estate taxes should not be required to justify deductions taken in determining Minnesota estate taxes. We disagree.

■ The Commissioner of Revenue may "make reasonable examinations or investigations" to ensure a tax return is accurate. Minn.Stat. § 270C.31, subd. 2 (2010). The Commissioner may also issue an order of assessment if he "determines that the correct amount of tax is different than that assessed on a return filed with the commissioner." Minn.Stat. § 270C.33, subd. 4(a)(1) (2010). An "assessment of tax made by the commissioner is prima facie correct and valid. The taxpayer has the burden of establishing its incorrectness or invalidity in any related action or proceeding." *Id.*, subd. 6 (2010). The law plainly provides that the Commissioner may issue a tax order and that a tax order is prima facie valid. Following the issuance of the tax order, Singer had the burden of proof before the tax court to prove that the tax order was invalid. *See id.*[2] Singer failed to satisfy his burden of proof. Therefore, the tax court did not err in concluding that Singer failed to prove the tax order was "incorrect[ ] or invalid[ ]." *See id.*

2. Singer's contention that federal law does not require estates to justify deductions has no merit. Nor is there merit to Singer's contention that the tax court impermissibly penalized him for asserting these arguments.

There is nothing in this record to suggest that the tax court did anything here other than apply Minnesota's estate tax law to the facts of this case.

## III.

■ Third, Singer argues that federal estate tax law preempts Minnesota's estate tax law, with the effect that Minnesota must "exactly follow" federal law. We presume the point of Singer's argument is that Minnesota estate tax law must conform to federal estate tax law, under which Singer's mother's estate owes no estate taxes. We disagree.

■ Whether federal law preempts state law in this case is governed by *Wyeth v. Levine*, 555 U.S. 555, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009). When federal law applies to a field the states have traditionally occupied, courts assume "that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* at 565, 129 S.Ct. 1187 (citation omitted) (internal quotation marks omitted). It is well settled that states have the power to exact estate taxes. *See* 42 *Am.Jur.2d, Inheritance, Estate, and Gift Taxes* § 7 (2000) ("In the absence of a special constitutional provision to the contrary, it is well settled that a state legislature has the power to exact estate and inheritance taxes ...."). Moreover, relevant federal law presumes that states exact estate taxes. *See* 26 U.S.C. § 2058(a) (2006) (permitting deductions from the value of the federal gross estate equal to the amount of estate taxes actually paid to any state or the District of Columbia). Singer points to no federal law that would support a conclusion that Congress intended to supersede the states' power to exact estate taxes, or that would bar Minnesota from taxing estates of Minnesota residents differently than those estates are taxed under federal law.

## IV.

■ Fourth, Singer argues that Minnesota law is unconstitutional because it does not provide for an alternate valuation date for all estates. We disagree. Singer has pointed to no authority that precludes a state from declining to apply federal elections to estates that do not file federal estate tax returns. The absence of a provision in Minnesota law allowing an estate of any size to elect an alternate valuation date does not render Minnesota's estate tax laws unconstitutional.

## V.

■ Fifth, Singer argues that the tax court did not have jurisdiction to determine whether he acquired title to his mother's house by adverse possession. We disagree. Save for appeals, Minn.Stat. § 271.01, subd. 5 (2010), makes the tax court "the sole, exclusive, and final authority for the hearing and determination of all questions of law and fact arising under the tax laws of the state" in cases appealed or transferred to it. Whether Ruth Singer's home is part of her estate is a question of fact affecting the value of her gross estate and, by extension, the amount of taxes properly assessed against the estate. By appealing the Commissioner's order to the tax court, Singer invoked the jurisdiction of the tax court to determine the propriety of the Commissioner's assessment.

■ Moreover, before the tax court Singer had "the burden of establishing [the Commissioner's assessment's] incorrectness or invalidity." Minn.Stat. § 270C.33, subd. 6. As part of that burden, it was up to Singer to establish that his mother did not have title to the homestead on the date of her death and that the homestead is not part of her estate. Ruth Singer's house is registered property; under Minn.Stat. § 508.02 (2010), "[n]o title to registered land in derogation of that of the registered owner shall be acquired by ... adverse possession." Nothing in the record explains why Minn.Stat. § 508.02

does not preclude Singer's obtaining the house by adverse possession.

 Finally, even assuming for the sake of argument that it is permissible to obtain title to registered property by adverse possession, Singer failed to satisfy the hostile- and exclusive-possession prongs of the adverse possession test. *See SSM Invs. v. Siemers*, 291 N.W.2d 383, 384 (Minn.1980) (identifying five factors a person must establish to acquire title by adverse possession: "actual, open, hostile, continuous, and exclusive possession" for 15 years). Singer acknowledges that his mother lived in the house until August 30, 2001, meaning that Singer's possession of the house was not exclusive before that date. Nor has Singer shown that his possession of the house, either while his mother was living in the house or after, was anything other than by her consent.

The tax court properly determined that the value of Singer's mother's home should be included in her gross estate.

## VI.

 Finally, Singer argues that once the tax court transferred the matter to the district court, he was entitled to a hearing on his constitutional arguments in the district court before (or in place of) the district court's transfer back to the tax court. We disagree. Under our decision in *Erie Mining*, "[t]he district court may either decide the constitutional issue or refer the matter back to the tax court which will

then have subject matter jurisdiction to rule initially on the constitutional issue." 343 N.W.2d at 264. Singer has presented no argument suggesting that either the district court or the tax court failed to comply with the requirements of *Erie Mining*.

For the reasons set forth above, the decision of the tax court is affirmed.[3]

---

3. We also briefly comment on Singer's deduction for funeral expenses. Singer deducted $20,000 for funeral expenses, which the Commissioner rejected because Singer failed to substantiate them. According to the tax court, "[a]t trial, [Singer] produced documentation showing funeral costs in the amount of $9,776.10." As a result, the tax court affirmed "the Commissioner's disallowance of $10,223.90 of the amount claimed as funeral expense on Ruth Singer's estate tax return."

The tax court, however, ultimately affirmed the Commissioner's November 23, 2010, order "in all respects," even though that order disallowed—*in full*—the deduction for funeral expenses. With respect to funeral expenses, we read the tax court's decision as affirming the Commissioner's tax order only with respect to "the Commissioner's disallowance of $10,223.90 of the amount claimed as funeral expense on Ruth Singer's estate tax return."