Kevin W. HARBAUGH, Relator,

v.

COMMISSIONER OF REVENUE,
Respondent.

No. A12–1342.

Supreme Court of Minnesota.

May 22, 2013.

Matthew C. Rockne, Rachel Stein, Rockne Law Office, Zumbrota, MN, for relator.

Lori Swanson, Attorney General, Sara L. Bruggeman, Assistant Attorney General, Saint Paul, MN, for respondent.

## OPINION

ANDERSON, PAUL H., Justice.

Kevin Harbaugh and his ex-wife both claimed their two children as dependents on their Minnesota individual income tax returns for the 2007, 2008, and 2009 tax years. The Minnesota Department of Revenue determined that only Harbaugh's ex-wife was entitled to claim the children as dependents and that Harbaugh had underpaid his Minnesota taxes when he improperly claimed the children as dependents. Harbaugh appealed the Department's determination to the Minnesota Tax Court, which dismissed the appeal for lack of subject matter jurisdiction on the ground that Harbaugh had not timely filed his notice of appeal. We affirm.

On April 29, 2011, the Minnesota Department of Revenue issued an order of assessment against relator Kevin Harbaugh. The Department had determined that both Harbaugh and his ex-wife claimed their two children as dependents on their Minnesota individual income tax returns for 2007, 2008, and 2009. The Department based its ruling on the undisputed fact that, under the terms of the parties' marriage dissolution, only Harbaugh's ex-wife was allowed to claim the children as dependents. The Department's determination meant that Harbaugh had underpaid his state income taxes for those three tax years and had received a larger property tax refund than he was entitled to receive.

Harbaugh commenced an administrative appeal of the Department's determination. The Department affirmed its determination and assessed $5,820 in tax, credits, and interest, but the Department did not assess any penalties. Harbaugh appealed the Department's ruling to the Minnesota Tax Court, claiming that his two children had lived with him during the years in question and that he was thus entitled to claim them as dependents. Harbaugh obtained a 30–day extension to file his appeal. The extended deadline for filing Harbaugh's notice of appeal was December 27, 2011.

On December 22, 2011, Harbaugh mailed his notice of appeal from Zumbrota to the tax court and the Department of Revenue. The Department received the notice of appeal on December 27, 2011; but the notice sent to the court was marked by the court as "filed" on December 28, 2011, which was one day after the deadline for filing the notice of appeal. On March 14, 2012, the Commissioner of Revenue moved to dismiss Harbaugh's appeal for lack of subject matter jurisdiction because the appeal was not timely filed. The court granted the Commissioner's motion and dismissed the appeal. Harbaugh then appealed that decision to our court.

When, as here, the underlying facts are not disputed, we have held that " 'we need only consider whether the law was properly applied.' " *Singer v. Comm'r of Revenue*, 817 N.W.2d 670, 675 (Minn.2012) (quoting *McLane Minn., Inc. v. Comm'r of Revenue*, 773 N.W.2d 289, 293 (Minn. 2009)). We conduct a de novo review of the tax court's legal conclusions. *Id.*

The Commissioner argues that the right to appeal a Department of Revenue determination to the tax court is purely statuto-

ry. To support this argument, the Commissioner relies on *Acton Construction Co. v. Commissioner of Revenue,* in which we said that "when the legislature creates a right not existing at common law, it has the power to impose any restrictions it sees fit." 391 N.W.2d 828, 835 (Minn.1986) (citation omitted) (internal quotation marks omitted). The Commissioner then asserts that the deadline set by the statute to file a notice of appeal with the tax court means that the tax court must *actually* receive the notice of appeal by the statutory deadline. The Commissioner cites *Langer v. Commissioner of Revenue,* where we concluded that, because the statutes empowering the tax court to hear appeals do not specifically authorize filing appeals by mail, the deadline must function in the same manner as when relators deliver their notice of appeal to the tax court in person. *Langer v. Comm'r of Revenue,* 773 N.W.2d 77, 80–81 (Minn.2009).

The Commissioner also argues that the common law mailbox rule, under which mailing an item through the United States Postal Service creates a rebuttable presumption that the item will arrive at its destination within the "usual time," does not apply here. *See* E.W.H., *Rebuttal of Presumption of Receipt of Letter Properly Mailed and Addressed,* 91 A.L.R. 161 (1934) (defining common law mailbox rule). The Commissioner claims this to be so because the right to appeal an administrative determination to the tax court arises by statute, rather than from the common law. The Commissioner concludes by arguing that the tax court was correct when it ruled as a matter of law that Harbaugh's notice of appeal arrived at that court on December 28, 2011.

Harbaugh asserts that the tax court "erred as a matter of law" when it dismissed his appeal for lack of subject matter jurisdiction because he had "presented direct evidence" that the notice of appeal was timely filed. Harbaugh argues that the mailbox rule applies to his appeal and that the rule creates a rebuttable presumption that the appeal was timely filed. Harbaugh acknowledges that the determinative date for finding when an appeal is filed is the date that the notice of appeal was actually received—but he goes on to contend that the purpose of the mailbox rule is to "assist with determining the date of actual physical delivery." Harbaugh then argues that the statutory creation of the right of appeal does not abrogate the mailbox rule because the statute does not explicitly repeal that rule for purposes of tax court proceedings. He claims that such an action—explicit repeal or rejection of the rule—is required for abrogating a common law rule such as the mailbox rule.

Harbaugh also claims that the tax court's conclusion that his notice of appeal arrived on December 28, 2011, was in error because he had offered "direct evidence" that "must be considered." Harbaugh asserts that this direct evidence includes: the fact that Harbaugh had mailed the notice of appeal on December 22, five days before it was due; that the Commissioner received Harbaugh's appeal on December 27; that the offices of the tax court and the Department of Revenue are less than one mile apart; and that, in a different case, a notice of appeal submitted to the tax court on December 27 was incorrectly marked as received on December 28. Harbaugh asserts this last point shows there was a "glitch" at the tax court on December 27.

We begin our analysis by noting that, after briefing was completed, this case was placed on our nonoral calendar for conference. After our conference, the Commissioner moved to dismiss Harbaugh's petition for a writ of certiorari based on our

order in *Express Scripts, Inc. v. Comm'r of Revenue*, No. A12–1966, Order, 2013 WL 310642 (Minn. filed Jan. 18, 2013) (dismissing a petition for a writ of certiorari as untimely under Minn.Stat. § 271.10, subd. 2 (2012)). Our order in *Express Scripts* was issued after our deliberation in this case. We have previously recognized that judicial economy can be a relevant consideration in allowing tax challenges to proceed. *See In re Objections & Defenses to Real Property Taxes*, 410 N.W.2d 321, 324 (Minn.1987). Judicial economy may also favor resolving a submitted case when "the relevant questions have been briefed by the parties and the record is sufficient for us to decide the ... issues." *Frazier v. Burlington N. Santa Fe Corp.*, 811 N.W.2d 618, 628–29 (Minn.2012); *see also Anderson v. Frontier Commc'ns*, 819 N.W.2d 143, 149 (Minn.2012) (noting judicial economy favored resolving issue of employer knowledge, rather than remanding, because facts were undisputed). Here, the facts are undisputed, the arguments have been fully briefed, and the case was submitted for our consideration before the *Express Scripts* order cited by the Commissioner was filed. The dissent claims that, by reaching the merits in this case, we are acting inconsistently, no judicial-economy interest is served, and our decision depends on "our intuition about whether judicial economy favors review." We disagree for all of the foregoing reasons. Moreover, judicial economy can sometimes be served by something as simple as letting a taxpayer know that his or her arguments were heard, a point that the dissent overlooks. Therefore, based on principles of judicial economy, we deny the Commissioner's motion to dismiss and proceed to address the merits of this appeal.

■ We have held that Minnesota's income tax system is a statutory creation, that statutory time limits for administrative appeals are to be " 'strictly construed,' " and that such time limits are jurisdictional in nature. *Langer*, 773 N.W.2d at 80 (citing *State v. Bies*, 258 Minn. 139, 146, 103 N.W.2d 228, 236 (1960)) (quoting *Kearns v. Julette Originals Dress Co.*, 267 Minn. 278, 282, 126 N.W.2d 266, 269 (1964)). We have also held, and the parties here do not dispute, that the date that matters for filing a notice of appeal is the date that the appeal was actually received by the tax court.[1] *Id.* Despite Harbaugh's contention that he has presented "direct evidence" that his notice of appeal was received by the tax court on December 27, 2011, all of the factors that he lists are at best speculative that the appeal *may well* have arrived at that time. The only direct evidence of the date when the notice of appeal arrived at the tax court is the time stamp placed on the actual notice of appeal by that court—a date that is one day after the applicable filing deadline.

We have never held that, under Minnesota law, the mailbox rule applies to deadlines created by statute and Harbaugh does not cite any Minnesota case law for

---

1. We note that the Legislature recently amended Minn.Stat. § 271.06 (2012), to provide that if a notice of appeal, proof of service, and filing fee are delivered by mail to the tax court administrator after the statutory deadline, "the date of filing is the date of the United States postmark stamped on the envelope or other appropriate wrapper in which the notice of appeal, proof of service upon the commissioner, and filing fee are mailed." Act of May 1, 2013, ch. 36, § 1, 2013 Minn. Sess. Law Serv. ——, —— (West) (to be codified at Minn.Stat. § 271.06, subd. 2a). This amendment, however, does not affect the timeliness of Harbaugh's appeal to the tax court. The amendment "is effective for filings delivered by the United States Postal Service with a postmark date after August 1, 2013." *Id.*

this proposition. As Harbaugh points out, the tax court, in an unrelated case, has already considered a notice of appeal that was due to the tax court on December 27, 2011, and which the tax court marked filed on December 28. In that case, the court found that the notice of appeal had in fact arrived at the court on December 27. *Lehman Bros. Holdings, Inc. v. Comm'r of Revenue,* No. 8415–R, 2012 WL 1850725, at *1–2 (Minn.T.C. May 16, 2012). In *Lehman Brothers,* the taxpayer submitted its notice of appeal via private courier and was subsequently able to present a receipt obtained by the private courier, on which the tax court acknowledged delivery. *Id.* at *1. The receipt had been signed by a representative of the tax court at 8:49 a.m. on December 27. *Id.* Despite this delivery on December 27, the notice of appeal at issue in *Lehman Brothers* was not time stamped by the tax court until the following day. *Id.* at *2.

The foregoing example notwithstanding, Harbaugh presents no direct evidence, such as that presented in *Lehman Brothers,* in support of his assertion that his notice of appeal arrived on December 27. Even taking Harbaugh's assertions at face value, we are only left to speculate that his notice of appeal *may* have arrived on December 27. We conclude that speculation along these lines is not enough to overcome the fact that Harbaugh's notice of appeal was time stamped by the tax court on December 28. Therefore, we hold that the tax court properly dismissed Harbaugh's appeal for lack of subject matter jurisdiction.

■ Before we conclude our analysis, it is worth acknowledging that the result reached in this case may appear harsh and, as we have noted, "[w]e are entitled to take any action as the interests of justice may require." *Greene v. Comm'r of Minn. Dep't of Human Servs.,* 755 N.W.2d

713, 725 n. 9 (Minn.2008) (citing Minn. R. Civ.App. P. 103.04). For instance, on rare occasions, we have expanded our review of tax court orders in the interests of justice. *See Brookfield Trade Ctr., Inc. v. Cnty. of Ramsey,* 609 N.W.2d 868, 874 n. 6 (Minn. 2000); *Tarutis v. Comm'r of Revenue,* 393 N.W.2d 667, 669 (Minn.1986).

In the present case, however, we decline to consider making such an exception. We have never held that the mailbox rule extends to statutorily created rights of appeal. Further, the tax court has only considered the types of arguments that Harbaugh raises in his underlying appeal when the parties to a marriage dissolution have not already allocated the dependent tax exemptions. *See Torgersen v. Comm'r of Revenue,* No. 2543–S, 1978 WL 1786, at *1 (Minn.T.C. Mar. 6, 1978); *Iverson v. Comm'r of Revenue,* Nos. 2491–S, 2518–S, 1978 WL 990, at *1 (Minn.T.C. Jan. 24, 1978). In this case, the Commissioner's investigation indicated that Harbaugh's divorce decree specifically provided that his ex-wife is entitled to claim their children as dependents. Therefore, Harbaugh's underlying appeal appears to lack merit.

For the foregoing reasons, we conclude that the tax court did not err when it dismissed Harbaugh's appeal for lack of subject matter jurisdiction because Harbaugh's notice of appeal was not timely filed.

Affirmed.

Dissenting, STRAS and DIETZEN, JJ.

STRAS, Justice (dissenting).

The court's rule in the decision we announce today can be boiled down to the following proposition: we may treat the time limits for filing an appeal as optional in some cases and mandatory in others, depending on our intuition about whether judicial economy favors review. *Compare*

*supra* at 6, *with Express Scripts, Inc. v. Comm'r. of Revenue,* No. A12–1966, Order, 2013 WL 310642 (Minn. filed Jan. 18, 2013) (dismissing a petition for writ of certiorari because it was filed after the deadline in Minn.Stat. § 271.10, subd. 2 (2012)). The unstated assumption underlying the court's rule is that the time limitations for filing an appeal are merely prudential requirements that we are free to ignore when we see fit. That assumption, however, is at odds with our case law. As we stated just last year, the statutory requirements governing appeals from the tax court "must be strictly construed." *Beuning Family LP v. Cnty. of Stearns,* 817 N.W.2d 122, 129 (Minn.2012). Because I do not believe that hearing an appeal in the interest of judicial economy is consistent with our precedent requiring strict adherence to statutory filing deadlines, I respectfully dissent.

A party may seek review of a final order of the tax court by obtaining a writ of certiorari from this court "[w]ithin 60 days after notice of the making and filing of the order of the Tax Court." Minn.Stat. § 271.10, subd. 2; *accord Express Scripts,* No. A12–1966, Order at 2. In *Express Scripts,* we dismissed the petition for a writ of certiorari because the Commissioner of Revenue failed to "strictly comply with the statutory deadline[ ]" for filing the petition. No. A12–1966, Order at 2. We should treat this case no differently. Yet today the court essentially declares that, while Minnesota taxpayers must strictly comply with statutory deadlines,

we are exempt from them.[2] I cannot accept that double standard.

In its haste to reach the merits of this appeal, the court fails to acknowledge that Harbaugh did not timely file his petition for a writ of certiorari—a point that Harbaugh himself essentially concedes. Rather than attempting to distinguish *Express Scripts,* the court elects to review the merits of Harbaugh's late appeal in the interest of "judicial economy." This case warrants review, according to the court, because "the facts are undisputed, the arguments have been fully briefed, and the case was submitted for our consideration before the *Express Scripts* order cited by the Commissioner was filed." But even if judicial economy were an appropriate justification for ignoring a statutory filing deadline, the court fails to adequately explain how judicial economy is served by reviewing the merits of this case.

The court's silence is telling. "Judicial economy" refers to "[e]fficiency in the operation of the courts and the judicial system; esp., the efficient management of litigation so as to minimize duplication of effort and to avoid wasting the judiciary's time and resources." *Black's Law Dictionary* 923 (9th ed.2009). Just because we started considering the merits of this appeal before we realized that Harbaugh's petition was filed late does not mean that we should just go ahead and finish the job. *Cf. Honig v. Doe,* 484 U.S. 305, 340–42, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) (Scalia, J., dissenting) (criticizing the notion that jus-

---

**2.** By reaching the merits of Harbaugh's appeal, the court also *sub silentio* holds that the statutory deadline for obtaining a writ of certiorari under Minn.Stat. § 271.10, subd. 2, is not a jurisdictional requirement. Not only is that question neither briefed nor presented to us for decision, but the court's implicit answer is inconsistent with our interpretation of other similar statutory deadlines. *See, e.g., Harms v. Oak Meadows,* 619 N.W.2d 201, 203

(Minn.2000) (concluding that the statutory deadline for filing a petition for a writ of certiorari in an unemployment case is a jurisdictional requirement); *Ortiz v. Gavenda,* 590 N.W.2d 119, 122 (Minn.1999) (observing that "the limitation provisions in a statutorily created cause of action are jurisdictional, requiring dismissal [by a district court] for failure to comply—they do not have flexible parameters permitting them to be ignored").

ticiability principles can be ignored for prudential reasons such as judicial economy because, even when "a jurisdictional impediment prevents us from reaching . . . important merits issues," ignoring those impediments does "substantial harm to a governmental structure designed to restrict" the courts' jurisdiction). Nor does our decision today provide litigants or the courts with any additional guidance. The court and the parties essentially acknowledge that, under the undisputed facts of this case, Harbaugh's legal argument is foreclosed by *Langer v. Commissioner of Revenue*, 773 N.W.2d 77, 81 (Minn.2009). Telling the parties that we *really* meant what we said in *Langer* does not advance anything, much less judicial economy.

I respectfully dissent.

DIETZEN, Justice (dissenting).

I join in the dissent of Justice Stras.